**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **-v-**

**LINDA ASANTE,**
              **Defendant.**
_____

**15-CR-230-V**

## REPORT, RECOMMENDATION, AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report on dispositive motions.  Text Order of Referral dated December 17, 2015.

## PRELIMINARY STATEMENT

The defendant, Linda Asante, is charged in a two-count Indictment with making a false application in an immigration matter in violation of 18 U.S.C. § 1546(a), and making a materially false statement in violation of 18 U.S.C. § 1001(a)(2).  Dkt. #7.  Presently pending before this Court is the defendant's motion to dismiss Count I of the Indictment or in the alternative, to transfer venue to New Jersey.  Dkt. #15.  This Court previously heard oral argument during which it reserved decision on this motion and denied defendant's related discovery demands as moot.  Minute Entry dated September 27, 2016.  This Court's denial of defendant's omnibus discovery demands was reiterated by text order entered that same day.  Dkt. #22.

## FACTUAL BACKGROUND

The following facts are taken from the Criminal Complaint and Supporting Affidavit (Dkt. #1), the Indictment (Dkt. #7), and the Report of Investigation prepared by the Department of Homeland Security – Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") (Dkt. #19) after the case was referred from United States Citizenship and Immigration Services ("USCIS") and Fraud and National Security Operations.

The defendant, a native of Ghana, entered into the United States on September 8, 2013 at Newark International Airport on an F1 Student Visa, which authorized her to stay until August 19, 2014.  Dkt. #1, ¶ 7.  The defendant attended Brown University in Rhode Island.  Dkt. #19, p. 4.  The defendant graduated from Brown University in August of 2014, after which she resided with relatives in New Jersey while working at Bloomberg Financial in New York, New York.  Dkt. #19, p. 4.  Through Bloomberg, the defendant was granted a temporary extension of her F1 Visa until May 25, 2015.  Dkt. #19, p. 4.

On August 15, 2014, following her graduation from Brown University, the defendant married Alexander Gyambrah in New York, New York.  Dkt. #1, ¶ 8. Gyambrah is a native of Ghana who became a United States citizen in 2003, after he married a United States citizen, Tara Jabar-Gyambrah, in Ghana in 2002.  Dkt. #19, p. 4.  Jabar-Gyambrah and Gyambrah had two children together but divorced in 2010. Dkt. #19, p. 4.

With the assistance of counsel in New Jersey, the defendant and Gyambrah filed simultaneous applications on December 11, 2014, to adjust the defendant's status to that of a lawful permanent resident of the United States. Dkt. #1, ¶ 8. Specifically, Gyambrah filed a Petition for Alien Relative, Form I-130 ("I-130 Petition"), requesting that the defendant, as Gyambrah's "qualifying relative" by marriage, be allowed to apply to become a lawful permanent resident of the United States. Dkt. #1, ¶ 8. In USCIS parlance, Gyambrah, the United States citizen, was the petitioner and the defendant, as his relative by marriage, the beneficiary. Dkt. #1, ¶ 8.

Simultaneous to Gyambrah filing his I-130 Petition, the defendant filed an Application to Register Permanent Residence or Adjust Status, Form I-485 ("I-485 Petition").[1] Dkt. #1, pp. 3-4. When filing a Form I-485, a beneficiary must submit proof of eligibility to adjust his or her status and sign the form under penalty of perjury. Dkt. #1, p. 4. In her I-485 Petition, the defendant gave her address as 79 Pomona Place, Buffalo, New York, 14210. Dkt. #19-1, p. 2. Part Three, Question Nine of the Form I-485 asks, "[h]ave you, by fraud or by willful misrepresentation of a material fact, ever sought to procure, or procured, a visa or other documentation, entry into the United States or any immigrant benefit?," to which the defendant answered, "No." Dkt. #19-1, p. 5. Both Gyambrah's I-130 Petition and the defendant's I-485 Petition were mailed via the United States Postal Service from Gyambrah's attorney's office in South Orange, New Jersey, to the regional USCIS "Lockbox" in Chicago, Illinois, as required by USCIS.

---

[1] According to the Affidavit supporting the Criminal Complaint, the process of filing the I-130 and the I-485 at the same time is known as a "one-step" application for adjustment of status. Dkt. #1, p. 4.

Dkt. #19-1, pp. 9-10; "Direct Filing Addresses for Form I-485, Application to Register Permanent Residence or Adjust Status," https://www.uscis.gov/i-485-addresses.

On March 9, 2015, Gyambrah and the defendant appeared at the Buffalo, New York USCIS Office to interview for their pending I-130 and I-485 Petitions.  Dkt. #1, p. 4.  According to the Criminal Complaint, Gyambrah and Asante gave inconsistent answers under oath, "leading the USCIS adjudicator to suspect marriage fraud."  Dkt. #1, p. 4.  The two were then questioned separately and "confronted with the inconsistencies," at which time Gyambrah admitted that he married the defendant to help her stay in the U.S. and that the marriage was not "bona fide."  Dkt. #1, pp. 4-5.

USCIS referred the matter to HSI, who interviewed Gyambrah that same day.  Dkt. #19, p. 2.  During the March 9, 2015 interview and subsequent interviews on April 9, 2015, July 7, 2015, August 6, 2015, Gyambrah admitted the following with respect to his "marriage" to the defendant:  he met the defendant through her friend Adwoa (or "Adjoa") Danquah (or "Dankwa"), with whom Gyambrah had become acquainted at a party in West Orange, New Jersey in March of 2014 (Dkt. #19, pp. 9, 10, 33); at the party, Danquah told Gyambrah, "I have a friend in Rhode Island who is about to graduate and her visa is about to expire, would you be able to help her so she can stay?" (Dkt. #1, p. 5); Gyambrah agreed and met the defendant the following day at her aunt Emelie "Nana" Etse's residence in Belle Mead, New Jersey (Dkt. #1, p. 5); Etse offered Gyambrah $10,000 USD to marry the defendant (Dkt. #1, p. 5); a few weeks later, Etse offered Gyambrah an additional $5,000 USD to be paid after the defendant

obtained her green card (Dkt. #19, p. 10); Gyambrah married the defendant at a courthouse in New York, New York on August 15, 2014 (Dkt. #19, p. 10); Etse thereafter paid Gyambrah $10,000 USD (Dkt. #1, p. 5); Gyambrah never stayed at the defendant's house and he did not have a physical relationship with her (Dkt. #19, p. 11); the attorney who filed Gyambrah's and the defendant's I-130 and I-485 Petitions, Desmond Duwani, was a personal friend of Gyambrah's (Dkt. #1, p. 5; Dkt. #19, pp. 33-34); Gyambrah understood what a "real" marriage is, and his marriage to the defendant is "not a real marriage."  Dkt. #19, p. 5.

Following his interview on March 9, 2015, Gyambrah withdrew his I-130 Petition.  Dkt. #19, p. 2.  The defendant's I-485 Petition was denied immediately thereafter.  Dkt. #1, p. 5.

On May 12, and 13, 2015, HSI Investigators interviewed Danquah, Etse, and the defendant in New Jersey.  Dkt. #19, pp. 15, 17, 21.

On December 17, 2015, the defendant was indicted on two counts related to her fraudulent marriage to Gyambrah and attempt to adjust her status based on that marriage.  Count I charges her with violating 18 U.S.C. § 1546(a) by "knowingly subscribing to a false statement in an Application to Register Permanent Residence or Adjust Status, Form I-485" on December 11, 2014.  Dkt. #7.  This charge relates to the defendant answering "No" to the question of whether she had by fraud or willful misrepresentation of a material fact, ever sought to procure an immigration benefit,

when in truth and in fact, she had attempted to procure United States citizenship through her fraudulent marriage to Gyambrah.  Dkt. #15, p. 8.  Count II charges the defendant with violating 18 U.S.C. § 1001(a)(2) by making a materially false statement, specifically, by stating on March 9, 2015, during her USCIS interview in Buffalo, New York, "that she was in a bona fide marriage to a United States citizen, whereas in truth and in fact, and as the defendant then and there well knew, she was not . . . ."  Dkt. #7, p. 2.

By motion filed on July 9, 2016, the defendant asked this Court to dismiss Count I of the Indictment or in the alternative, to transfer venue of the case to New Jersey.  For the following reasons, it is RECOMMENDED that the motion to dismiss Count I be DENIED and ORDERED that the request for a transfer of venue is denied.

### DISCUSSION AND ANALYSIS

*Motion to Dismiss Count I*

The Sixth Amendment guarantees trial "by an impartial jury of the State and district wherein the crime shall have been committed . . . ."  U.S. CONST. AMEND. VI; *see also* U.S. CONST., Art. III, § 2, cl. 3.  Rule 18 of the Federal Rules of Criminal Procedure likewise provides that "the government must prosecute an offense in a district where the offense was committed."  *See* Fed.R.Crim.P. 18.  When a federal statute does not explicitly define where the crime is considered to have been committed, "[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *United States v. Cabrales,* 524 U.S. 1, 6-7

(1998) (quoting *United States v. Anderson,* 328 U.S. 699, 703 (1946)).  To do so, a court must "initially identify the conduct constituting the offense," paying special attention to the verbiage of the statute, and then determine "the location of the commission of the criminal acts."  *United States v. Rodriguez-Moreno,* 526 U.S. 275, 279-80 (1999).  "Venue is proper only where the acts constituting the offense – the crime's 'essential conduct elements' – took place."  *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005) (quoting *Rodriquez-Moreno*, 526 U.S. at 280).

When a crime consists of a single, non-continuing act, venue is proper in the district where the act is performed.  *Ramirez*, 420 F.3d at 139; *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1188 (2d Cir. 1989).  On the other hand, where "the acts constituting the crime and the nature of the crime charged implicate more than one location," *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985)*,* venue may be had in any of the districts where any proscribed act or conduct element occurred.  *See Rodriguez-Moreno*, 526 U.S. at 281 (stating that "where a crime consists of distinct parts which have different localities[,] the whole may be tried where any part can be proved to have been done") (quoting *United States v. Lombardo,* 241 U.S. 73, 77 (1916)); *see also* 18 U.S.C. § 3237(a) (stating that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed").

When venue may properly lie in more than one district, a court should answer "whether the criminal acts in question bear 'substantial contacts' with any given venue." *United States v. Saavedra,* 223 F.3d 85, 93 (2d Cir. 2000) (quoting *Reed*, 773 F.2d at 477). In deciding whether substantial contacts exist, a court considers: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate fact-finding." *Saavedra*, 223 F.3d at 93. The government bears the burden of proving by a preponderance of the evidence that venue is proper. *Beech-Nut,* 871 F.2d at 1188; *United States v. Smith,* 198 F.3d 377, 384 (2d Cir. 1999).

The defendant contends that venue is improper in the Western District of New York on Count I of the Indictment charging a violation of 18 U.S.C. § 1546(a). In relevant part, 18 U.S.C. § 1546(a) provides:

> [w]hoever knowingly **makes under oath**, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, **knowingly subscribes** as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or **knowingly presents** any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [shall be subject to certain penalties].

18 U.S.C.A. § 1546. Thus, the "conduct elements" of 18 U.S.C. § 1546(a) are making a document containing a false statement, subscribing to that document, and/or presenting that document. *Ramirez*, 420 F.3d at 140.

Relying on *Ramirez*, the defendant contends that venue is only proper in New Jersey, where the Form I-485 was drafted and subscribed to, Chicago, Illinois (USCIS Lockbox), where the form was mailed to, or Lee's Summit, Missouri, where the form was received and processed. Dkt. #15, ¶ 30. This Court disagrees because *Ramirez* is both legally and factually distinguishable from the defendant's case.

In *Ramirez*, 420 F.3d at 134, the defendant (Vitug) was tried and convicted in the Southern District of New York (Manhattan) for visa fraud, specifically, presenting a false Form I-129 Petition for a Nonimmigrant Worker ("I-129 Petition"). According to the government, Vitug, a doctor, falsely represented in a I-129 Petition that her medical practice would employ her co-defendant's clients in jobs that did not in fact exist. Vitug signed the I-129 Petition in New Jersey and filed it with USCIS in Vermont. Included among the attachments to the I-129 Petition were Labor Condition Application forms ("LCA forms") that Vitug had previously signed and submitted to the New Jersey Department of Labor, which forwarded them to the United States Department of Labor ("USDOL") in Manhattan. In vacating the visa fraud counts against Vitug, the Second Circuit Court of Appeals held that Vitug's act of sending the LCA forms to the Manhattan branch of the USDOL prior to assembling her I-129 Petition package and submitting to Vermont was "preparatory to the offense," and not part of the offense. Therefore, the Court of Appeals held, venue in the Southern District of New York was not proper for the visa fraud counts. *Ramirez*, 420 F.3d at 141.

Significantly, the *Ramirez* Court affirmed Vitug's Southern District of New York convictions for making false statements, specifically, for presenting the false LCA and other forms to the USDOL. The Court held that venue was proper in the Southern District of New York (Manhattan) despite the fact that Vitug initially filed the documents in New Jersey, because "the force propelled . . . by the defendants immediately contemplated Manhattan," as it had in a congruent Second Circuit Court of Appeals case, *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973).

In *Candella*, the defendant presented false documents to a Brooklyn agency in the Eastern District of New York, which forwarded the documents to the agency's central office in Manhattan in the Southern District of New York for necessary audit and approval. 487 F.2d at 1227. The *Candella* Court found that although the offense began in Brooklyn, it was not completed until the documents were processed in Manhattan. *Id.* at 1228. Since the offense was begun and completed in different places, the *Candella* Court held, it could "thus be prosecuted in the whole area through which force propelled by the offender operates," including the Southern District of New York. *Id.* at 1228.

Relying on *Candella*'s reasoning, the *Ramirez* Court found that Vitug could be prosecuted in the Southern District of New York for her false LCA forms, notwithstanding the fact that she initially filed her documents with the DOJ in New Jersey. *Ramirez*, 420 F.3d at 143. "[V]enue was properly laid in the Southern District of New York because Vitug's 'statements continued to be false and continued to be within

the jurisdiction of the United States' when they finally reached Manhattan." *Ramirez*, 420 F.3d at 143 (quoting *Candella*, 487 F.2d at 1228).

*Ramirez* does not compel dismissal of Count I relating to the defendant's allegedly false immigration petition in this case.  Unlike *Ramirez*, the defendant's false document, her I-485 Petition, was in fact forwarded to the district in which the government seeks to prosecute her, the Western District of New York, for final processing.  Moreover, the defendant's I-485 Petition was not merely a preparatory document like the one underlying the dismissed visa fraud counts in *Ramirez*.  Although the defendant made her I-485 Petition in New Jersey and sent it to the USCIS Lockbox in Illinois via the United States Postal Service, her application was ultimately forwarded to Buffalo in the Western District of New York for her interview and final processing.

As in *Candella* and with the false LCA forms in *Ramirez*, the "force propelled" by the defendant in this case "immediately contemplated" the district in which she was indicted, the Western District of New York.  *See Ramirez*, 420 F.3d at 143 (quoting *Candella*, 487 F.2d at 1228).  The defendant gave a Buffalo address (and not a New Jersey address) on her I-485 Petition, representing that she was living with her purported husband, Gyambrah.  Dkt. #19-1, p. 2.  The "Instructions for I-485, Application to Register for Permanent Resident Status," indicate that all applicants between 14 and 79 – like the defendant – must be photographed and fingerprinted (and possibly interviewed) at their local USCIS Application Support Center.  *See* "Form I-485 Instructions 10/05/15," pp. 2-3, https://www.uscis.gov/i-485.  It necessarily follows that

any vetting of the defendant's application after the initial processing would occur at the USCIS Office in Buffalo where she claimed to reside.

Although the offense began in New Jersey and continued through Illinois and Missouri, it was not complete until the I-485 Petition was finally processed in Buffalo. Thus, it is appropriate to prosecute the defendant in the Western District of New York, as her false statement "continued to be false and continued to be within the jurisdiction of the United States" when her I-485 Petition ultimately arrived here. *Candella*, 487 F.2d at 1228.

Venue in the Western District of New York is also fair under the "substantial contacts" test. *Beech-Nut,* 871 F.2d at 1188; *Smith,* 198 F.3d at 384. In support of her false application, the defendant held herself out as a Buffalo resident in a bona fide marriage to a United States Citizen who also resided in Buffalo. She also appeared here for her I-485 Petition interview, during which she lied to a USCIS Officer that she was in a "real" marriage to Gyambrah. All of the USCIS Officers and HSI Agents are from local Buffalo, New York offices. Gyambrah was interviewed numerous times in Buffalo and provided information that appears dispositive of the case. In this respect, nearly all of the "fact-finding" occurred in the Western District of New York making it the most suitable venue for trial. *Saavedra*, 223 F.3d at 93.

The defendant makes much of the fact that some of the witnesses who allegedly brokered the marriage deal between the defendant and Gyambrah are in New

Jersey, making that district a more appropriate fact-finding venue. This Court disagrees. Given Gyambrah's statements to investigators, this case will very likely come down to whether a jury believes Gyambrah or the defendant regarding the validity of their marriage. Gyambrah has admitted to authorities, against his penal interests, that his marriage to the defendant was a sham; he was paid to marry her so she could get permanent status in the United States; they do not have a physical relationship, and they do not live together. The defendant has made statements directly contradicting Gyambrah. Whether the marriage was "real" is the dispositive issue in this case, and there is no question that Gyambrah and the defendant, as the two people in the marriage, possess the most relevant information on the matter.

Consistent with this reasoning, the government has stated that it does not intend to call as witnesses at trial Danquah, Etse, or the attorney, Duwani, whom the government characterized at oral argument as "unindicted co-conspirators." Should it become necessary for the defense to interview these witnesses, there is no reason to think that it would take an inordinate amount of time or cause great expense. It took HSI Agents only two days to interview Danquah, Etse, and the defendant in New Jersey in May of 2015, at which time Danquah and Etse denied arranging and/or paying for Gyambrah to marry the defendant. Dkt. #19, pp. 13-20. Danquah stated that she had met the defendant only once. Dkt. #19, p. 16. Duwani, the attorney, withdrew as Gyambrah's and the defendant's counsel while the two were being interviewed on March 9, 2015 by Fraud Detection and National Security Operations Officers, before the

HSI interview even began. Dkt. #19, p. 6. All of this suggests that these witnesses would decline to testify on the defendant's behalf should the case proceed to trial.

Based on the foregoing, the Court finds that by a preponderance of the evidence that venue is proper in the Western District of New York. As such, it is RECOMMENDED that defendant's motion to dismiss Count I of the Indictment be denied.

*Motion to Transfer Venue*

Federal Rule of Criminal Procedure 21(b) provides that upon a defendant's motion, a court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed.R.Crim.P. 21(b).

> Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court. *See, e.g., United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir.1990); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir.1979). In deciding such a motion, the court should consider such factors as: (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer, *id*.; see *Platt v. Minnesota Mining & Manufacturing Co.*, [376 U.S. 240, 243-44 (1964)]. No one of these considerations is dispositive, and "[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Stephenson*, 895 F.2d at 875.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

Courts have also considered: (k) whether granting a motion for a change of venue would result in multiple trials in multiple districts, *United States v. Morrison*, 946 F.2d 484, 489-90 (7th Cir. 1991); (l) any inconvenience to the government and its witnesses, *Jones v. Gasch*, 404 F.2d 1231, 1241 (D.C. 1967); and (m) prejudice falling short of that necessary to justify a transfer under Rule 21(a), *United States v. Solis Jordan*, 223 F.3d 676, 685 (7th Cir. 2000).

This Court finds that on balance, these factors weigh in favor of denying transfer of this case to New Jersey. While the defendant resides in New Jersey, the most crucial witnesses in the case, Gyambrah and the investigating agents, are located in the Western District of New York. Moreover, the events that triggered the investigation into Gyambrah and the defendant's marriage – their inconsistent statements regarding the legitimacy of their marriage – occurred in the Western District of New York. Because HSI Buffalo agents prepared the investigative reports, the relevant documents also are located in this district.

It bears noting that trying this case in either of the proposed venues will cause both the prosecution and the defense to incur expenses. At the same time, venue for Count II is undoubtedly more appropriate in the Western District of New York than in New Jersey. If this Court were to transfer Count I to New Jersey, it would result in two trials based on the same set of operative facts, thereby undermining judicial economy. If venue was split in this manner, docketing could become potentially onerous especially if documents needed to be sealed, as they were for this motion. It is

undisputed that having a trial in New Jersey would be inconvenient for all of the government's witnesses.  Finally, there is nothing to suggest that defendant would suffer prejudice, as opposed to inconvenience, by being tried in the Western District of New York.

Accordingly, the defendant's motion to transfer venue is denied.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1)(B) that:

This Report, Recommendation, and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation, and Order must be filed with the Clerk of this Court within fourteen (14) days after its receipt in accordance with 28 U.S.C § 636(b)(1), Fed.R.Crim.P. 58(g)(2), and Rule 59 of the Local Rules of Criminal Procedure for the Western District of New York ("Local Rule Crim. Pro. 59"). Generally, "[w]hen a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision."  *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988) (internal citations omitted).

"Written objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to

which objection is made and the basis for each objection, and shall be supported by legal authority." Local Rule Crim. Pro. 59(c)(2).

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988). To ensure compliance, Local Rule Crim. Pro. 59 requires that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

**<u>Failure to comply with the provisions of Local Rule Crim. Pro. 59, may result in the District Judge's refusal to consider the objection.</u>**

DATED: December 22, 2016
Buffalo, New York

*S/ H. Kenneth Schroeder, Jr.*

**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**