UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.

LINDA ASANTE,

        Defendant.
_____

15-CR-230(LJV)
DECISION AND ORDER

## **INTRODUCTION**

On December 17, 2015, the defendant, Linda Asante, was indicted on two counts related to her fraudulent marriage to Alexander Gyambrah. She now 1) moves to dismiss Count I of the indictment for improper venue; and 2) moves for transfer of venue of both counts of the indictment to the District of New Jersey. Docket Item 15. Magistrate Judge H. Kenneth Schroeder, Jr., recommended that both the motion to dismiss Count I and the request for a transfer of venue be denied. Docket Item 25 at 6. This Court adopts the Report and Recommendation and, for the reasons stated in the report and below, DENIES the defendant's motion to dismiss Count I and DENIES defendant's motion to transfer the venue of both counts.

## **BACKGROUND**

Asante, a native of Ghana, came to the United States on an F1 Student Visa that authorized her to remain in the United States until August 19, 2014. Docket Item 1 at ¶ 7. After graduating from Brown University in August 2014, she moved to New Jersey to live with relatives while working at Bloomberg Financial in New York City. Docket

Item 15 at ¶ 9. Through her job at Bloomberg Financial, Asante was granted a temporary extension of her F1 Visa until May 25, 2015. *Id.* On August 15, 2014, Asante married Alexander Gyambrah in New York City. Docket Item 1 at ¶ 8. Gyambrah, also a native of Ghana, had become a United States citizen in 2003. *Id.* at ¶ 10.

Following their marriage, the couple—with the assistance of counsel in New Jersey—filed simultaneous applications to adjust her status to lawful permanent resident of the United States. *Id.* at ¶ 8. Her husband filed a Petition for Alien Relative, Form I-130 ("I-130 Petition"), while Asante simultaneously filed an Application to Register Permanent Residence or Adjust Status, Form I-485 ("I-485 Application"). *Id.* at ¶¶ 8-9. In her I-485 Application, Asante gave her address as 79 Pomona Place, Buffalo, New York, 14210. Docket Item 25 at 3. She also answered "No" to Part Three, Question Nine, which asks "[h]ave you, by fraud or by willful misrepresentation of a material fact, ever sought to procure, or procured, a visa or other documentation, entry into the United States or any immigrant benefit?" *Id.* Both documents were mailed via the United States Postal Service from the attorney's office in South Orange, New Jersey, to the regional United States Citizenship and Immigration Services ("USCIS") "Lockbox" in Chicago, Illinois, as required by USCIS. *Id.*

On March 9, 2015, Asante and Gyambrah appeared at the USCIS Office in Buffalo, New York, for interviews in connection with the I-130 Petition and the I-485 Application. After Gyambrah was confronted with inconsistencies during his interview, he admitted that their marriage was not "bona fide" and that he was trying to help Asante remain in United States. *Id.* at 4. USCIS then referred the matter to the

2

Department of Homeland Security – Immigration and Customs Enforcement, Homeland Security Investigations ("ICE"), which interviewed Gyambrah that day. *Id.*

Over the next several months, ICE interviewed Gyambrah three more times. During these interviews, Gyambrah admitted that he agreed to marry Asante in exchange for $15,000—$10,000 to be paid after the wedding and $5,000 upon her obtaining a green card. *Id.* He said that the defendant's aunt, Emelie Etse, paid him the first installment after the wedding on August 15, 2014. Docket Item 1 at ¶ 11. He told ICE that he was introduced to the defendant through her friend, Adwoa Danquah, whom he met in New Jersey. *Id.* He also admitted that he did not have a physical relationship with Asante and that their marriage was "not a real marriage." Docket Item 25 at 5. During this investigation, ICE also interviewed Danquah, Etse, and Asante in New Jersey. *Id.*

After Gyambrah's first ICE interview on March 9, 2015, he withdrew his I-130 Petition. *Id.* Immediately thereafter, the defendant's I-485 Application was denied. Docket Item 1 at ¶ 11.

Asante was indicted on December 17, 2015, on two counts related to her attempt to adjust her status based on her marriage to Gyambrah. Count I charges that on or about December 11, 2014, Asante "did knowingly subscribe as true under penalty of perjury . . . a false statement with respect to a material matter in an application and document required by the immigration laws and regulations," in violation of 18 U.S.C. §1546(a). Docket Item 7. This charge relates to Asante's answer of "No" to Part Three, Question Nine, on her I-485 Application. *Id.* Count II charges that on or about March 9, 2015, Asante made "a materially false, fictitious, and fraudulent statement and

representation . . . to an Immigration Services Officer . . . that she was in a bona fide marriage to a United States citizen, whereas in truth and in fact, and as the defendant then and there well knew, she was not," in violation of 18 U.S.C. § 1001(a)(2). *Id.*

## DISCUSSION AND ANALYSIS

### I. REVIEW OF REPORT AND RECOMMENDATION

This Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

### II. MOTION TO DISMISS COUNT I FOR IMPROPER VENUE

#### A. Legal Standard

The Constitution and Federal Rules of Criminal Procedure require that defendants be tried in the district where their crime was "committed." U.S. Const. amend. IV, Fed. R. Crim. P. 18; *see also* U.S. Const. art. iii, § 2, cl. 3. The Second Circuit has held that "[w]hen a federal statute defining an offense does not specify how to determine the location where the crime was committed, '[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005) (citing *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998)). To accomplish this task, a court must first identify the conduct constituting the offense and then determine the location where those criminal acts occurred. *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279 (1999). The Supreme Court advises courts to look to the verbs of a statute when identifying the conduct that constitutes an offense, but cautions that such analysis

4

should not occur "to the exclusion of other relevant statutory language." *Id.* at 280. On a motion to dismiss for improper venue, a court considers the acts which form the basis for the charges in the indictment. *See United States v. Cabrales*, 109 F.3d 471 (1997), *aff'd*, 524 U.S. 1 (1998).

When a crime consists of a single, non-continuing act, venue is proper in the district where the act occurred. *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989). But where "the acts constituting the crime and the nature of the crime charged implicate more than one location," any of the districts where an "essential conduct element" of the crime took place is an appropriate venue. *Ramirez*, 420 F.3d at 139. Under 18 U.S.C. § 3237(a), Congress codified the rule that continuing offenses may be prosecuted wherever proscribed conduct occurred: "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed."

The Supreme Court has cautioned against too broadly classifying offenses as continuing. *See United States v. Johnson,* 323 U.S. 273, 275 (1944). So when venue may properly lie in more than one district, the Second Circuit has established a "substantial contacts" test to determine "whether the criminal acts in question bear 'substantial contacts' with any given venue." *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (quotations omitted). Under the test, a court considers "four main factors: 1) the site of the crime, 2) its elements and nature, 3) the place where the effect of the criminal conduct occurs, and 4) suitability of the venue chosen for accurate factfinding." *Id.*

### B. Venue for Count I

In deciding whether venue is proper, this Court first must determine the conduct alleged to constitute the offense charged. *See Rodriguez-Moreno*, 526 U.S. at 279. Count I charges Asante with violating 18 U.S.C. § 1546 when she answered "No" on her I-485 Application to the question of "whether she had by fraud or willful misrepresentation of a material fact, ever sought to procure . . . any immigration benefit, [because] . . . the defendant then and there knew . . . she had [done so] . . . through a fraudulent marriage to a United States citizen." Docket Item 7. As relevant here, Section 1546 provides that:

> [w]hoever knowingly makes under oath, or ... knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [shall be subject to specified penalties].

In *Ramirez*, the Second Circuit held that "the verbs of the statute [Section 1546] exhaustively identify the conduct constituting the offense." 420 F.3d at 140. That is, the statute disallows "the making of, or subscribing to, false statement under oath, as well as the presentation of documents containing such statements." *Id.* Therefore, venue in the Western District of New York is proper if the indictment charges that any of those "essential conduct elements" occurred here. *See Cabrales*, 109 F.3d 471. And the Court finds that it does.

Following oral argument on the objections to the Report and Recommendation, this Court asked for further briefing from both parties on two issues. Docket Item 39 at 2. Specifically, the Court asked: "Of what significance is the fact that the indictment charges only that the defendant, on or about a specific date, knowingly subscribed a

6

false statement as true but does not allege that the defendant also presented such a statement?" *Id.* In its supplemental briefing addressing the Court's question, the government agrees that "the indictment lacks the phrase 'presenting,'" Docket Item 43 at 7 (alterations omitted), but argues that it does not need to charge Asante with "presenting" a false statement because "venue is properly laid in the whole area through which force propelled by an offender operates." Docket Item 43 at 7 (quoting *United States v. Candella*, 487 F.2d 1223, 1228 (2d Cir. 1973). In light of *Candella*, this Court agrees.

The government argues that because the defendant put a Buffalo, New York, address on her I-485 Application, she "knew or reasonably should have known that review and processing of her application would take place in the Western District of New York." *Id.* The government's theory is predicated on the offense charged here under 18 U.S.C. § 1546(a) being a continuing offense—that is "begun in one district and completed in another, or committed in more than one district." 18 U.S.C. § 3237; *see Candella*, 487 F.2d at 1227-28 (finding that the offense of making a false statement did not terminate where the statement actually was made, but continued into districts where the false statement was "propelled" by the defendant's conduct).

In *Candella*, the defendant was convicted of making false statements under Section 1001—which in relevant part provides, "whoever, in any matter within the jurisdiction of . . . the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation [shall be subject to specified penalties]." 18 U.S.C. § 1001. The defendant made false statements in funding requests prepared, executed, and handed to New York City officials in Brooklyn—the

7

Eastern District of New York. *Candella*, 487 F.2d at 1227. The officials then transferred some of these documents to a city agency in Manhattan—the Southern District of New York—for review. *Id.* The Second Circuit found that "[a]lthough enough was done in the Eastern District to constitute a crime there . . . it does not follow that the crime terminated, and that what transpired in Manhattan was irrelevant for venue purposes." *Id.* The Court concluded that "[t]he force propelled here by the defendants immediately contemplated Manhattan. . . . The statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in Manhattan, where the decision was reached to make funds available." *Id.*

Though the defendant in *Candella* was charged with a Section 1001 violation, this Court does not see any reason to treat the language of that statute—"*makes* any materially *false*, fictitious, or fraudulent *statement* or representation"—differently from the language in Section 1546 applicable here—"*makes* under oath . . . any *false statement*." *Compare* 18 U.S.C. § 1001, *with* 18 U.S.C. 1546 (emphasis added). Indeed, just as the "force propelled" by the defendant in *Candella* immediately contemplated Manhattan—the location of the agency reviewing the documents—so too did the "force propelled" by Asante immediately contemplate Buffalo—the location she used as her address on the I-485 Application and therefore the location of the USCIS office that reviewed it. *See id.* Just as the statements in *Candella* remained false when they moved from the Eastern to the Southern District of New York, Asante's remained false in her 1-485 Application as it traveled from New Jersey to Chicago to the Western District of New York. *See id.* And so this Court agrees with and accepts Judge

8

Schroeder's recommendation that Count I charges a continuing offense for which venue here in the Western District of New York is proper.

This Court also agrees with Judge Schroeder that venue here is "fair under the 'substantial contacts' test." Docket Item 25 at 12. The factors of the Second Circuit test—the site of the crime; its elements and nature; the place where the effect of the criminal conduct occurs; and the suitability of the venue chosen for accurate factfinding—favor venue here. *See Saavedra*, 223 F.3d at 93. As noted above, the crime and its elements occurred here and elsewhere. But the effect of the criminal conduct was felt here in Western New York, where the immigration decisions were to be made. Moreover, and as addressed below, the key witnesses and the relevant documents are located in the Western District of New York. *See id.* And Asante held herself out as a Buffalo resident in her I-485 Application that was reviewed in this district. *See id.* Therefore, and for the reasons stated in the Report and Recommendation, the Court finds venue here under the 'substantial contacts' test more than fair.

Because the conduct constituting the offense charged in Count I was alleged to have happened by propelled force in the Western District of New York, defendant's motion to dismiss Count I for improper venue is denied.

### III. MOTION FOR TRANSFER OF VENUE

Having found venue for Count I proper here in the Western District of New York, all that remains for the Court is to determine whether one or both counts should be transferred to the District of New Jersey as defendant requests or should remain in the Western District of New York.

9

Under Federal Rule of Criminal Procedure 21(b), upon a defendant's motion, a court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). When considering a motion to transfer venue, courts should consider the following factors:

> (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). The Second Circuit notes that no one factor is dispositive; rather, the court must try to strike a balance and determine the most important factors. *Id.*

Here, the only factors that cut in favor of transferring venue to the District of New Jersey are those that involve the location of the defendant herself. As noted above, the false statement in Count I was made both here and in New Jersey, but the false statement at issue in Count II was made during an interview that occurred in the Western District of New York. As Judge Schroeder notes, "the most crucial witnesses in the case, Gyambrah and the investigating agents," as well as "the relevant documents," are located here. Docket Item 25 at 15. Regardless of where the case is venued, one side or the other will incur substantial costs. Asante's current counsel resides and works here in the Western District of New York. And considerations of judicial efficiency counsel against transferring venue on Count I, which arguably

presents a closer question, and not Count II, which undoubtedly has a much closer connection to Western New York than to New Jersey.

For these reasons, and for the reasons stated in the Report and Recommendation, this Court agrees with Judge Schroeder that there is no sound basis in law or in fact to transfer venue to New Jersey. On the contrary, there is good reason not to.

## **CONCLUSION**

For the reasons stated above, this Court accepts the recommendation of Judge Schroeder, DENIES the defendant's motion to dismiss Count I for improper venue, and DENIES the defendant's motion to transfer venue of Count I and Count II.

SO ORDERED.

Dated: August 10, 2017
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE